## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DARREN MITCHELL, | : | Case No. 1:12-cv-943 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ANDREW P. CRAFT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER DENYING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT (Doc. 40)

This civil action is before the Court on Defendants' motion for summary judgment

(Doc. 40) and the parties' responsive memoranda (Docs. 47, 49).[1]

## I.  BACKGROUND

Plaintiff Darren Mitchell brought this civil action under 42 U.S.C. § 1983, alleging

that Defendants, former Ohio Department of Youth Services ("DYS") employees, used

excessive force against him while he was an inmate in the custody of the Ohio River

Valley Juvenile Correctional Facility ("ORVJCF").  (Doc. 3).   Specifically, Plaintiff

alleges that Defendants physically assaulted him on February 8, 2011—three days after

he had a verbal altercation with Defendant Craft.  (*Id.*)

Following the incident, Plaintiff was charged with two DYS rule violations:

assault and creating a health, safety, or fire hazard.  (Doc. 40, Ex. A at 56-57).  A

disciplinary hearing was held and Plaintiff was found guilty of both violations.  (Doc. 40,

---

[1]  Defendants include Andrew Craft, Roger Frye, John Haberthy, and Robert Thurman.

Ex. D). Plaintiff's rule violation convictions resulted in the extension of his

incarceration. (Doc. 40, Ex. E).[2]

Defendants move for summary judgment, alleging that Plaintiff's claim is barred

under the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), as

success on the merits would call into question Plaintiff's disciplinary conviction for

assault. (Doc. 40 at 2). Defendants also argue that there is no evidence to support

Plaintiff's allegations, and that they are entitled to qualified immunity. (*Id.*)

## II. UNDISPUTED FACTS[3]

1. At the time of the incident giving rise to this lawsuit, Plaintiff was a juvenile offender in the custody of the DYS at the Ohio River Valley Juvenile Correctional Facility ("ORVJCF"). (Doc. 40, Ex. A at 3; Doc. 36 at 8).

2. Defendants were employed by DYS as Youth Specialists. (Doc. 40, Ex. A at 4; Doc. 37 at 7; Doc. 38 at 8).

3. On Saturday February 5, 2011, Plaintiff and Defendant Craft had a verbal altercation. (Doc. 36 at 15-16; Doc. 37 at 21-22).

4. On Tuesday February 8, 2011, Defendants Craft, Thurman, and Frye were giving juvenile inmates in Plaintiff's unit the opportunity to clean their rooms. (Doc. 37 at 24-25; Doc. 38 at 15).

5. Plaintiff was asked if he wanted to clean his room and he said yes. (Doc. 36 at 24-25; Doc. 38 at 17-18).

6. Defendants Craft and Frye entered Plaintiff's room. (Doc. 40, Ex. A at 24).[4]

---

[2] The Release Authority Records reflect that the decision not to release Plaintiff was based upon multiple rule violations, not merely those at issue in this instant case. (Doc. 40, Ex. E at 2, 5).

[3] *See* Defendants' Proposed Undisputed Facts (Doc. 40 at 3-6); Plaintiff's Response and Proposed Disputed Facts (Doc. 47, Ex. A).

[4] Plaintiff agrees with this statement "to the extent that at some point during the incident, Craft and Frye entered Mitchell's room." (Doc. 47, Ex. A, ¶ 6).

7. Either Defendant Craft or Defendant Frye handed Plaintiff a broom. (Doc. 40, Ex. A at 13, 17).

8. Defendant Frye left the room and joined Defendant Thurman outside the room. (Doc. 40, Ex. A at 24).

9. A physical altercation occurred, involving Plaintiff and the four Defendants. (Docs. 40 & 47).

10. Defendant Thurman attempted to pull Plaintiff off of Defendant Craft using a handcuff technique. (Doc. 38 at 21).[5]

11. During the struggle between Plaintiff and Defendants Thurman and Frye, Plaintiff was eventually brought to the ground. (Doc. 36 at 26-27; Doc. 38 at 21-22).[6]

12. After Plaintiff's hands were placed behind his back, Defendant Haberthy placed handcuffs on him. (Doc. 40, Ex. A at 13; Doc. 38 at 24).

13. Plaintiff was injured during the incident. His injuries included: a laceration on his left outer eyelid; edema on the second, third, and forth knuckles of his right hand; an abrasion and edema behind his right ear; an abrasion and edema on the top of his head; and superficial scratches on the right side of his neck. (Doc. 40, Ex. A at 8-9).

14. Plaintiff is right handed. (Doc. 39 at 46).

15. Defendant Craft was also injured during the incident, suffering a contusion on his forehead and a concussion. (Doc. 40, Ex. B at 11; Doc. 37 at 12).[7]

16. Plaintiff was charged with a rule violation for assault and creating a health, safety, or fire hazard. (Doc. 40, Ex. A at 56-57; Doc. 36 at 36).

---

[5] Plaintiff denies this statement "to the extent Defendant Frye contends he is the one who attempted to pull Plaintiff off of Defendant Craft using a 'bear hug'." (Doc. 47, Ex. A,¶ 11).

[6] Plaintiff denies "to the extent that this paragraph suggests that Mitchell was struggling with Defendants as opposed to attempting to protect himself by leaving the room." (Doc. 47, Ex. A, ¶ 12).

[7] Plaintiff agrees with this statement "to the extent that is what the medical records conclude." (Doc. 47, Ex. A, ¶ 19).

17. An Intervention Hearing was held on February 10, 2011.  Plaintiff was found guilty of rule violations for assault and for creating a health, safety, or fire hazard.  (Doc. 40, Ex. C at 11; Ex. D at ORVJCF 0115 – 0120; Doc. 36 at 38).

18. As a result of being found guilty, Plaintiff's time in the custody of DYS was extended.  (Doc. 40, Ex. C at 11; Ex. E at ORVJCF 0016-0019, 248-249).

19. After the incident, Plaintiff filed a grievance alleging that he was assaulted by Defendants.  (Doc. 36 at 34-36; Doc 3, Ex. 1 at 1-4).

20. During the investigation of Plaintiff's grievance, the investigator talked to fourteen individuals, including Plaintiff, Defendants, other DYS staff and juvenile inmates.  (Doc. 40, Ex. A at 4).

21. During the investigation of Plaintiff's grievance, the investigator interviewed Plaintiff on two separate occasions.  (Doc. 40, Ex. A at 65-67, 102-104).

22. Plaintiff's version of the incident changed between his first and second interview.  (Doc. 40, Ex. A at 65-67, 102-104; Doc. 36 at 45-46).

23. The investigator concluded that Plaintiff's allegations of assault and retaliation were unsubstantiated.  (Doc. 40, Ex. A at 27).

24. The investigator also concluded that the allegation Plaintiff assaulted Defendant Craft was substantiated.  (Doc. 40, Ex. A at 27-28).[8]

### III.  STANDARD OF REVIEW

A motion for summary judgment shall be granted if the evidence submitted to the Court demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

---

[8]  Plaintiff failed to admit or deny this statement, so the statement is deemed admitted pursuant to this Court's Standing Order.  *See* Standing Order Governing Civil Motions for Summary Judgment at (A)(1), *available at* http://www.ohsd.uscourts.gov/FPBlack.

outcome of the action.  *Celotex*, 477 U.S. at 323.  <u>All facts and inferences must be</u> <u>construed in the light most favorable to the party opposing the motion</u>.  *Matsushita Elec.* *Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## IV.  ANALYSIS

Defendants argue that they are entitled to summary judgment for three reasons. (Doc. 40).  **First**, Defendants allege that Plaintiff's claim is barred under the Supreme Court's holding in *Heck v. Humphrey* "because it would call into question his related disciplinary conviction, which lengthened his period of incarceration."  (*Id*. at 7). **Second**, Defendants assert that "there is no evidence to support Plaintiff's allegation[s]," and that "Defendants' use of force on Plaintiff was a good-faith effort to restore discipline."  (*Id*. at 2, 9).  **Third**, Defendants argue that even if they "used more force than necessary in hindsight to restore discipline to the situation, they are still entitled to qualified immunity."  (*Id*. at 12).

### A.  Plaintiff's Claim is Not Barred under *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court held that a plaintiff's claim for damages for a prior unconstitutional conviction or sentence, or other harm arising therefrom, is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can show that the underlying conviction or sentence was overturned.  512 U.S. at 486-87.

5

However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*. at 487. (Emphasis in original). This holding is equally applicable to prison disciplinary hearings, the outcome of which affected the duration of a plaintiff's term of incarceration. *See Edwards v. Balisok*, 520 U.S. 641, 643 (1997); *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004).

To determine whether a plaintiff's § 1983 claim is barred by *Heck*, "the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (internal quotation marks and citations omitted). "Generally speaking, 'a claim of excessive force does not necessarily relate to the validity of the underlying conviction and therefore may be immediately cognizable.'" *Id.* (quoting *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006)). However, there are two circumstances in which a claim of excessive force may invalidate the underlying conviction: (1) "when the criminal provision makes the lack of excessive force an element of the crime"; and (2) "when excessive force is an affirmative defense to the crime." *Schreiber*, 596 F.3d at 334 (citing *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005)). Where the record is unclear as to the factual basis for the underlying conviction, the court cannot conclude that the plaintiff's claim would *necessarily* invalidate the conviction or sentence. *See Lucier v. City of Ecorse*, 601 F. App'x. 372, 377 (6th Cir. 2015).

In the instant case, a finding in Plaintiff's favor would not necessarily invalidate his underlying disciplinary conviction. Following the incident that gave rise to this

action, DYS commenced an investigation and, upon completion, issued a report of its findings. (Doc. 40, Ex. A). Concurrently, Plaintiff was charged with, and ultimately convicted of, two rule violations: (1) creating a health, safety, or fire hazard; and (2) assault. (Doc. 40, Ex. A at 56-57). An Intervention Hearing was held on February 10, 2011, during which an Intervention Hearing Officer determined that both violations had been "proven." (Doc. 40, Ex. D). As a result of this determination, Plaintiff was given "180 days intervention time." (Doc. 40, Ex. A at 58). The Intervention Hearing Officer also prepared a Hearing Report, dated February 10, 2011, detailing the factual findings underlying Plaintiff's convictions. (Doc. 40, Ex. D). The entirety of the factual findings set forth in the Hearing Report is as follows:

> Youth [Mitchell] did assault staff based on witness statements from staff and youth. Youth [REDACTED] who's [sic] room is directly across from the room where the incident [sic] stated Youth Mitchell assaulted staff. Youth Mitchell had stated Youth [REDACTED] should have seen what happened. Therefore [both rule violations are] found proven. Note: staff injury to head due to being struck by handle.

*Id.* at 4.

Defendants argue that "[a]lthough Plaintiff alleges that Defendants attacked him, that is contrary to the disciplinary hearing's conclusion." (Doc. 40 at 8). However, while the Hearing Report's factual findings assert that there was sufficient witness corroboration to find Plaintiff had violated DYS rules, it makes no reference to Plaintiff's allegations of excessive force or to Defendants' conduct. (Doc. 40, Ex. D at 4). Indeed, the only mention of Plaintiff's allegations is found in a summary of Plaintiff's oral statement regarding the incident. *Id*. Accordingly, Defendants' assertion that Plaintiff's

7

allegations are "contrary to the disciplinary hearing's conclusion" is unavailing.

The Court notes that the DYS Investigation Report did conclude that Plaintiff's allegations were unsubstantiated.  (Doc. 40, Ex. A at 27).  However, the Investigation Report is distinct from the Hearing Report.  The Investigation Report sets forth the findings of the DYS investigation (Doc. 40, Ex. A), whereas the Hearing Report includes the results of the Intervention Hearing and provides the factual findings which underlie Plaintiff's convictions (Doc. 40, Ex. D).  Additionally, findings in the Investigation Report could not have served as the factual basis for Plaintiff's conviction, as the Investigation Report is dated March 23, 2011 (*i.e.*, nearly six weeks <u>after</u> Plaintiff's February 10, 2011 Intervention Hearing and conviction).  (Doc 40, Ex. A at 28).

Additionally, Defendants' argument that Plaintiff's claim is barred under *Heck* because Plaintiff was found to be the 'aggressor' is likewise unavailing.  First, even if Plaintiff were the aggressor in the incident, *Heck* does not bar a § 1983 claim alleging that excessive force was used **<u>after</u>** the apparent need for force had subsided.  *See, e.g.*, *Matheney v. City of Cookeville*, 461 F. App'x. 427, 431 (6th Cir. 2012) ("an excessive force claim is not barred when the alleged use of force occurred *after* the suspect was handcuffed and brought under control"); *Ridley v. Leavitt*, 631 F.2d 358, 359 (4th Cir. 1980) ("[e]ven if [plaintiff] were the original aggressor, that fact does not necessarily entail the further conclusion that his jailers did not respond with excessive force"); *Williams v. Liberty*, 461 F.2d 325, 328 (7th Cir. 1972) ("we are unable to see why an officer who is attacked by a prisoner could not use more force than reasonably necessary

8

in defending himself, and be subject to liability for the excessive force").[9]

Here, Plaintiff states that "the gravamen of [his] excessive force claim is that Defendants, especially Haberthy, went too far in using force to restrain him," and that Defendants continued to physically assault him "as [he] lay defenseless on the floor." (Doc. 47 at 5). Plaintiff alleges that he was kneed in the groin, choked, thrown to the floor repeatedly, and kicked in the face, even after he was incapacitated. (Doc. 3 at 4). However, none of Plaintiff's allegations "necessarily imply" that Plaintiff did not also assault Defendant Craft. And "that the act to which [Defendants] responded was a criminal act does not foreclose the possibility that [Defendants'] response also was illegal." *Vasquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1108 (11th Cir. 1992). Here, in due course, the proof will tell.

### B. Disputed Facts Exist Regarding the Use of Force

Next, Defendants argue that Plaintiff cannot show that the force used against him constituted a violation of his Constitutional rights. (Doc. 40 at 9).

Claims of excessive force inflicted during a term of incarceration are analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995). "[T]he maintenance of prison security and discipline may often require that prisoners be subjected to physical contact which at common law would be actionable as an assault." *Id.* at 1037 (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)). For physical contact "to

---

[9] The Court notes that *Ridley* and *Williams*, while on point, were both decided prior to *Heck*, and they address the issue of a bar within the context of collateral estoppel.

constitute a claim under the Eighth Amendment, the offending conduct must reflect an 'unnecessary and wanton infliction of pain.'" *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

"[T]he core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992) (internal citations omitted). The factors relevant to this determination include: (1) the extent of injury suffered by the inmate; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the perceived threat to which the defendant was responding; and (5) any effort made to mitigate the severity of the forceful response. *Id.* "The absence of serious injury is therefore relevant," but it is not determinative as to whether excessive force was used. *Id.* Indeed, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated … whether or not significant injury is evident." *Id.* at 9.

Here, Defendants assert that their "use of force on Plaintiff was not done sadistically to cause harm, but rather to restore discipline … in response to Plaintiff's assault on Defendant Craft." (Doc. 40 at 11). Specifically, Defendants state that "[a]fter Plaintiff permitted Defendant Craft to enter his room, [Plaintiff] struck Defendant Craft in the head with a broom handle and then punched him in the face." (*Id.*) Defendants claim that "[t]hese facts are established by the contusion and concussion documented in Defendant Craft's medical records as well as the edema on Plaintiff's right hand." (*Id.*)

10

Accordingly, Defendants argue that their "use of force on Plaintiff was justified because they were protecting Defendant Craft and attempting to regain control of Plaintiff."  (*Id*.)

Conversely, Plaintiff asserts that, three days before the incident, he became Defendant Craft's "new target."  (Doc. 47 at 2).  Plaintiff alleges that Defendant Craft spit in Plaintiff's food and then threatened him with physical violence after Plaintiff confronted him for "being a bully."  (*Id*.)  Plaintiff asserts that this verbal altercation led to him being physically assaulted in his room on February 8, 2011, during a scheduled "clean up" day.  (*Id*. at 3).  According to Plaintiff, Defendant Craft "grabbed [him] by the shoulders and kneed him in the groin."  (Doc. 3 at 4).  Plaintiff states that when "he tried to run from the room to protect himself, [Defendant] Frye jumped on his back causing [Plaintiff] to fall and strike the back of his head violently on the toilet … [and] Frye then began choking him."  (*Id*.)  Finally, Plaintiff asserts that "[Defendant] Haberthy kicked [him] in the head as [he] lay defenseless on the floor," resulting in a gash above Plaintiff's left eye, which required stitches.  (*Id*. at 3, 5).

On summary judgment, the Court must construe all facts and inferences in the light most favorable to the non-moving party, which "usually means adopting the plaintiff's version of the facts."  *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011).  However, here, Defendants argue that the Court should not adopt Plaintiff's "version of events [as they are] 'blatantly contradicted by the record, so that no reasonable jury could believe it.'"  (Doc. 49 at 6-7) (quoting *Scott v. Harris*, 550 U.S.

11

372, 380 (2007)).[10]  The Court disagrees.

First, mere inconsistencies in Plaintiff's allegations do not amount to 'blatant contradictions' so as to justify discrediting his facts entirely.  *See Coble*, 634 F.3d at 870 ("[w]e allow cases to proceed to trial even though a party's evidence is inconsistent, because '[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited'").  Further, "[t]his is not a case where [Defendants'] evidence is so objectively compelling that no reasonable juror could believe [Plaintiff]." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006).

Accordingly, the Court finds that there are genuine disputes as to material facts in this case, which cannot be resolved on summary judgment.

### C.  Defendants Are Not Entitled to Qualified Immunity

Finally, Defendants assert that they are entitled to qualified immunity.  (Doc. 40 at 11).  Specifically, Defendants argue that "[i]n protecting Defendant Craft from Plaintiff's assault, Defendants were well within established law when they used force on Plaintiff and are therefore entitled to judgment as a matter of law based on qualified immunity." (*Id.* at 13).

Qualified immunity "protects government officials and employees performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011) (quoting

---

[10] Defendants further note that Plaintiff has provided inconsistent versions of the incident over time. (Doc. 49 at 6).

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In evaluating a claim of qualified immunity, a court must determine: (1) whether the facts alleged by plaintiff can show that a constitutional right has been violated; and (2) whether defendant's alleged transgression "clearly violated" that constitutional right.  *Id.*  However, "summary judgment would not be appropriate if there is a factual dispute (*i.e.,* a genuine issue of material fact) involving an issue on which the question of immunity turns, such that one cannot determine before trial whether the defendant did acts that violate clearly established rights."  *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988).

Here, genuine issues of material facts exist with respect to the core issue of whether Defendants acted maliciously and sadistically to injure Plaintiff, or whether they acted in a good faith effort to maintain and restore discipline.  Due to the factual disputes, Defendants are not entitled to qualified immunity upon summary judgment.  *See Poe*, 853 F.2d at 426.

## V.  CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment (Doc. 40) is **DENIED**.

**IT IS SO ORDERED**.

Date:  8/10/15                              _s/ Timothy S. Black_
                                            Timothy S. Black
                                            United States District Judge

13